U.S. DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DISTRICT

| | |
|---|---|
| JAMES G. ABOUREZK, ROXANNE DUNBAR-ORTIZ, and JANE FONDA, <br><br> Plaintiffs, <br> v. <br><br> PROBUSH.COM, INC., a Pennsylvania corporation, MICHAEL MARINO, an individual, and BENJAMIN MARINO, an individual, <br><br> Defendants. | Civil Action No. 03-4146 <br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

COMES NOW the Plaintiffs, by and through their attorney of record, with this Plaintiffs' Memorandum of Law in Support of Their Motion for Partial Summary Judgment.

### I.    Case Overview

Defendant Probush.com, which is owned by Defendants Benjamin and Michael Marino, is a website in support of President Bush. On their website they have made a "Traitor's List," where they list names and pictures of people who they say do not support the President and are in fact "traitors." Plaintiffs discovered their names on this list. Plaintiffs believe under both federal law and South Dakota law, such a statement is considered libel per se. Defendants filed a Motion to Dismiss, which was denied by Judge Piersol. In February, 2005, Plaintiff was allowed to

1

amend his Complaint and add Jane Fonda and Roxanne Dunbar-Ortiz as Plaintiffs. The Defendants stipulated to adding Benjamin and Michael Marino as Defendants. Interrogatories and depositions of Plaintiff and Defendants have also been completed. Plaintiff now files this Motion for Partial Summary Judgment and prays the Court to find the Defendants liable for defamation against Plaintiff.

## II.     Standard of Review

Motions for summary judge are particularly well suited in defamation cases. *See Treutler v. Meredith Corporation*, 455 F.2d 255, 257 at Fn 1 (8th Cir. 1972), citing *Bon Air Hotel, Inc. v. Time, Inc.*, 426 F.2d 858 (5th Cir. 1970); *Walker v. Pulitzer Publishing Co.*, 394 F.2d 800 (8th Cir. 1968); *Washington Post Company v. Keogh*, 125 U.S.App.D.C. 32, 365 F.2d 965 (1966); *Time, Inc. v. McLaney*, 406 F.2d 565 (5th Cir. 1969), *cert. den.* 395 U.S. 922, 89 S.Ct. 1776, 23 L.Ed.2d 239 (1969); *Hurley v. Northwest Publications Inc.*, 273 F.Supp. 967 (D.Minn. 1967), aff'd 398 F.2d 346 (8th Cir. 1968); *See also Southard v. Forbes, Inc.*, 588 F.2d 140, (5th Cir. 1979). Such motions are welcome because of the importance of free speech, so summary judgment is typically the rule and not the exception in defamation actions. *See Guitar v. Westinghouse Elec. Corp.*, 396 F.Supp. 1042 (S.D.N.Y 1975).

However, while defamation cases are well-suited to summary judgment, there is no presumption in favor of either the Plaintiff or Defendant. *See*

2

*Yiamouyiannis v. Consumers Union of U. S., Inc.*, 619 F.2d 932, (2d Cir. 1980) and *Schultz v. Newsweek, Inc.*, 668 F.2d 911, (6th Cir. 1982). Further, even in cases where the Plaintiffs are alleged to be public figures or public officials (and the Plaintiffs do not stipulate or agree that they are such figures), summary judgment for the Plaintiff is allowed if they offer some evidence on which a jury could find convincing clarity of actual malice or reckless disregard. *Ragano v. Time, Inc.*, 302 F.Supp. 1005, 1010 (M.D.Fla. 1969).

Further, where the party is entitled to summary judgment if they present sufficient evidence to show recklessness that the publisher chose to substitute his opinion for facts actually known by him in an article that is capable of a defamatory meaning. *See Rogano, supra.* Also, if the Plaintiffs are found to be public figures or public officials, summary judgment is appropriate if the evidence could support a reasonable jury finding, by clear and convincing evidence, that defendants acted with actual malice publishing the "Traitor List. *See Liberty Lobby, Inc. v. Rees,* 852 F.2d 595, 598 (C.A.D.C. 1988). The Plaintiffs believe they can meet these high burdens of proof as to the Defendants' liability in this case and that partial summary judgment is appropriate.

### III. Plaintiffs' Theories as to Why They Should Be Granted Partial Summary Judgment as to Liability

### A. Even if the Plaintiffs are Public Figures under the *Sullivan* Test, the Defendants Have Acted with Actual Malice/Reckless Disregard of the Facts

The seminal case of finding that a public official (and later, a public figure) must prove that the publisher engaged in actual malice is *New York Times Co. v. Sullivan,* 376 U.S. 254, (1964).[1] In *Sullivan* at 279-80, the U.S. Supreme Court held:

> The constitutional guarantees require, we think, a federal rule that prohibits falsehood relating to this official conduct unless he proves that the statement was made with "actual malice"--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.
>
> *See also generally* 1 *Sack on Defamation* 1-3, § 1.2.2 Public Officials: New York Times v. Sullivan (3d ed. 1999) and 1-24, § 1.2.8 Reaffirmation of New York Times Co. v. Sullivan: The Hustler Case.

Soon thereafter, the U.S. Supreme Court extended this doctrine to public figures in *Curtis Publishing Co. v. Butts,* 388 U.S. 130 (1967). In *Butts* at 155, Justice Harlan found:

> We consider and would hold that a "public figure," who is not a public official may. . . recover damages for a defamatory falsehood whose substance makes substantial danger to reputation apparent, on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers.
>
> *See also generally* 1 *Sack on Defamation* 1-10, § 1.2.4 Public Figures: Butts and Walker.

---

[1] Again, the Plaintiffs reiterate that they are not stipulation or admitting that they are public figures or public officials. However, as this is the "highest" burden they must meet if the Court does find them to be public figures, if they are able to meet the burden, they should prevail on their motion for partial summary judgment.

4

In subsequent cases, the U.S. Supreme Court has fleshed out the "actual malice" standard. In *Herbert v. Lando*, 441 U.S. 153, 156-7 (1979), the Court held:

> Although his cause of action arose under New York State defamation law, Herbert conceded that because he was a "public figure" the First and Fourteenth Amendments precluded recovery absent proof that respondents had published a damaging falsehood "**with 'actual malice'--that is, with knowledge that it was false or with reckless disregard of whether it was false or not.**" This was the holding of *New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), with respect to alleged libels of public officials, and extended to "public figures" by *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967). Under this rule, absent knowing falsehood, liability requires proof of reckless disregard for truth, that is, that the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968). **Such "subjective awareness of probable falsity,"** *Gertz v. Robert Welch, Inc.*, **418 U.S. 323, 335 n. 6, 94 S.Ct. 2997, 3004, 41 L.Ed.2d 789 (1974), may be found if "there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports."** *St. Amant v. Thompson, supra*, 390 U.S., at 732, 88 S.Ct., at 1326. **(Boldface added.)**

The S.D. Supreme Court has also given considerable thought to defining "actual malice" in defamation cases. In *Paint Brush Corp., Parts Brush Div. v. Neu* 599 N.W.2d 384, 398, (S.D.,1999) it found:

> Because malice may not be inferred under the statute, there must be a specific showing of malice which requires proof of reckless disregard for the truth or actual malice. " 'The real test of whether a defendant's conduct is reckless so as to constitute actual malice is whether he in fact entertained serious doubts as to the truth of his publications.' " *Tibke*, 479 N.W.2d at 906 (quoting *Uken*, 296 N.W.2d at 543). " 'Reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.' " *Janklow v. Viking Press*, 459 N.W.2d 415, 419 (S.D.1990) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968)). This Court has long held that the plaintiff has the burden of proving actual malice that destroys the privilege. (citations omitted). *Petersen v. Dacy*, 1996 SD at 8, 550 N.W.2d at 93.

5

The record in this case is replete with facts that the Defendants knowingly published a falsehood about the Plaintiff--they were individually or collectively "traitors" to the United States of America:

- Paragraph 5 of Plaintiffs' Statement of Undisputed Facts (PSOUF): Defendants Michael and Benjamin Marino are responsible for the content placed on probush.com.
- Paragraph 11 of PSOUF: The website named the Plaintiff as "traitors."
- Paragraph 18 of PSOUF: Defendant Michael Marino admitted on S.D. Public Radio that the Plaintiffs had not engaged in traitorous behavior.
- Paragraph 23 of PSOUF: Defendant Michael Marin admitted that Plaintiffs Dunbar-Ortiz and Fonda had not committed any traitorous act prior to publication.
- Paragraph 24 of PSOUF: Defendants knew of no traitorous acts by Plaintiff Abourezk prior to publication.
- Paragraph 26 of PSOUF: Defendant Benjamin Marino admitted Plaintiff Abourezk is not a traitor to the United States.
- Paragraphs 27 and 40 of PSOUF: Defendant Michael Marino admitted that Plaintiff Abourezk has not been a traitor.

6

- Paragraphs 21 and 22 of PSOUF: Defendants placed the Plaintiffs on the probush.com "Traitors List" because they had signed the "Not In Our Name" petition against United States invading Iraq for a second time.
- Paragraph 28 of PSOUF: Defendant Michael Marino admitted he had done no research as to whether Plaintiff Abourezk was a traitor prior to placing him on the "Traitors List."
- Paragraph 29 of PSOUF: Defendant Benjamin Marino admitted he had done no research as to whether the Plaintiffs were traitors prior to publishing their names on the probush.com "Traitors List."
- Paragraph 30 of PSOUF: Defendants did not believe that the signers of the "Not In Our Name Petition" were committing treason, including the Plaintiffs.
- Paragraph 36 of PSOUF: Defendant Michael Marino said famous people were chosen for placement on the "Traitors List" to help drive traffic to probush.com.
- Paragraph 41 of PSOUF: Defendant Michael Marino admitted he did not know whether the accusation of calling Plaintiff Abourezk a traitor constituted any fact or facts about him.
- Paragraph 42 of PSOUF: Defendant Michael Marino admitted that the "Traitors List" was not factual.

7

- Paragraphs 44 and 45 of PSOUF: The Defendants do not believe the Plaintiffs are guilty of any crime.

Frankly, the Court does not have to get to whether the Defendants "knew of should have known" that their allegation of treason and being a traitor against the Plaintiffs. The record clearly shows that the Defendants knew that the Plaintiff were not traitors yet went ahead and published the Plaintiffs' names on a list accusing them of being traitors to their country. If this is not the very definition of "recklessness" as defined by *Sullivan* and its progeny, then arguably nothing would ever be reckless. The Defendants knew what they were saying about the Plaintiffs was false yet they printed it. Thus, partial summary judgment is appropriate, based on the standards and tests articulated above.

### B. The Defendant's "Traitors List" is Not a Parody or Satire and is Not Protected Speech

Throughout the litigation, the Defendants have asserted that their "Traitors List" is protected speech as parody or satire. *See Defendants' Answer and First Amended Answer; See also Paragraph 30 of PSOUF*. This argument is just wrong. The Defendants' website is not a parody or satire.[2]

Dictionary.com defines parody as:

1.

---

[2] If the website is supposed to be funny, the Plaintiffs are not laughing.

8

    a. A literary or artistic work that imitates the characteristic style of an author or a work for comic effect or ridicule. See Synonyms at caricature.

    b. The genre of literature comprising such works.

2. Something so bad as to be equivalent to intentional mockery; a travesty: *The trial was a parody of justice.*

3. *Music.* The practice of reworking an already established composition, especially the incorporation into the Mass of material borrowed from other works, such as motets or madrigals.

Taking definition 1.a. first, what "characteristic style of an author or work for comic effect or ridicule" is the "Traitor List" imitating? What author? What style? It is simply a listing of people, including the Plaintiffs, who are called "traitors."

As to definition 1.b., it is obviously not "literature" in the sense of a novel, short story, poem, or even a comic book. Definition 3. is also not applicable.

As to definition 2., it is difficult to see how the Plaintiffs and other Americans taking a stand against a war they believe is ill conceived and foolish is somehow a "mockery." These Americans, including the Plaintiffs, were simply stating their heart-felt beliefs about an important political issue. This definition is non-operative as well.

"Satire" is the other definition. Dictionary.com defines it as:

1.

    a. A literary work in which human vice or folly is attacked through irony, derision, or wit.

9

    b. The branch of literature constituting such works. See Synonyms at caricature.

 2. Irony, sarcasm, or caustic wit used to attack or expose folly, vice, or stupidity.

As to definition 1.a., it is difficult to see how opposing a war is a "human vice or folly." As the Vietnam War showed, conducting an unpopular war with ill defined goals is folly, not the opposition thereto. Further, how is the mere placement of people on a list, including the Plaintiffs and calling them "traitors" "irony, derision, or wit"?

Definition 1.b. is not applicable. Definition 2 is similar to definition 1.a. Again, it would appear the elements of "irony, sarcasm, or caustic wit" are missing.

Thus, from a definitional point of view, the "Traitors List" is neither parody nor satire.

However, even if the Court finds that the "Traitors List" is parody or satire, its First Amendment protection only goes so far. The leading case defining the protection of parody and satire is *Hustler Magazine v. Falwell*, 485 U.S. 46 (1988). In *Hustler,* the magazine published what is admittedly a grotesque and false description of the Rev. Jerry Falwell's "first time" having sex. The magazine did a spoof on a Campari liquor ad then running at the time where famous people described their "first time" drinking the liquor, but making it sound like their first

10

sexual experience. Falwell, a noted conservative televangelist, sued Hustler for intentional infliction of emotional distress.

In the decision reversing the federal district court and the court of appeals, the U.S. Supreme Court did indeed layout protection for satire and parody under the First Amendment. *See Hustler* at 51. However, the Court also ruled that this protection is not absolute:

> **Of course, this does not mean that *any* speech about a public figure is immune from sanction in the form of damages.** Since *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), we have consistently ruled that **a public figure may hold a speaker liable for the damage to reputation caused by publication of a defamatory falsehood, but only if the statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."** *Id.,* 376 U.S., at 279-280, 84 S.Ct., at 726. **False statements of fact are particularly valueless; they interfere with the truth-seeking function of the marketplace of ideas, and they cause damage to an individual's reputation that cannot easily be repaired by counterspeech, however persuasive or effective.** See *Gertz,* 418 U.S., at 340, 344, n. 9, 94 S.Ct., at 3007, 3009, n. 9. But even though falsehoods have little value in and of themselves, they are "nevertheless inevitable in free debate," *id.,* at 340, 94 S.Ct., at 3007, and a rule that would impose strict liability on a publisher for false factual assertions would have an undoubted "chilling" effect on speech relating to public figures that does have constitutional value. "Freedoms of expression require 'breathing space.' " *Philadelphia Newspapers, Inc. v. Hepps,* 475 U.S. 767, 772, 106 S.Ct. 1558, 1561, 89 L.Ed.2d 783 (1986) (quoting *New York Times, supra,* 376 U.S., at 272, 84 S.Ct., at 721). **This breathing space is provided by a constitutional rule that allows public figures to recover for libel or defamation only when they can prove *both* that the statement was false and that the statement was made with the requisite level of culpability. (Boldface added.)**

11

What distinguishes *Hustler* from the present case is that Hustler magazine portrayed Rev. Falwell in what was clearly a cartoon setting. It was using the device of the Campari advertisements as a literary device to skewer Rev. Falwell.

In the current case, there was no such level of creativity. Rather than parody or satirize something current in popular culture at the time to make fun of the Plaintiffs, they simply used placed the Plaintiffs on a "Traitors List" and called them traitors with and initially buried disclaimer. *See Paragraphs 8, 9, 11, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 33, 34, 35, 36, 38, 39, 40, 41, 42, 44, 45, 46, 49, 50, 51, and 52 of PSOUF.* It is also difficult to see how it was a parody or satire of the "Not In Our Name" petition signed by Plaintiffs. There was no "play" on the petition. Again. Just a listing. *See Paragraphs 21 and 31 of PSOUF.* The website and list were just a crass means to make money and sell stuff for the Defendants--nothing more--just a "business opportunity." *See Paragraphs 7, 9, 10, 32, 43 of PSOUF and Exhibits 9 and 13 of PSOUF.*

### C. The U.S. Supreme Court No Longer Recognizes the "Opinion/Facts" Dichotomy

The Defendants' defense that "opinion" is not actionable in defamation has been washed away by the U.S. Supreme Court in *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 111 L.Ed.2d 1, 58 USLW 4846, 60 Ed. Law Rep. 1061, 17 Media L. Rep. 2009 (1990).

Plaintiff Milkovich was a high school wrestling coach. His team was involved in an altercation at a match. The Ohio high school athletic association conducted a hearing on the matter. Following the hearing, a sports reporter wrote in his column in the local paper that Milkovich lied to the high school sanctioning body about the incident.[3] *See Milkovich* at 497 U.S. 3.

The Defendants argued that the accusation against Coach Milkovich was protected speech as "opinion." The U.S. Supreme Court disagreed, holding at 497 U.S. 17-19:

> Respondents would have us recognize, in addition to the established safeguards discussed above, still another First-Amendment-based protection for defamatory statements which are categorized as "opinion" as opposed to "fact." For this proposition they rely principally on the following dictum from our opinion in *Gertz:*
> "Under the First Amendment there is no such thing as a false idea. However

---

[3] *See* 497 U.S. 4-5 contains excerpts of the column:

" '... [A] lesson was learned (or relearned) yesterday by the student body of Maple Heights High School, and by anyone who attended the Maple-Mentor wrestling meet of last Feb. 8.

" 'A lesson which, sadly, in view of the events of the past year, is well they learned early.

" 'It is simply this: If you get in a jam, lie your way out.

" 'If you're successful enough, and powerful enough, and can sound sincere enough, you stand an excellent chance of making the lie stand up, regardless of what really happened.

" 'The teachers responsible were mainly head Maple wrestling coach, Mike Milkovich, and former superintendent of schools H. Donald Scott.. . . . .

" 'Anyone who attended the meet, whether he be from Maple Heights, Mentor, or impartial observer, knows in his heart that Milkovich and Scott lied at the hearing after each having given his solemn oath to tell the truth.

" 'But they got away with it.

" 'Is that the kind of lesson we want our young people learning from their high school administrators and coaches?

" 'I think not.'

13

pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." 418 U.S., at 339-340, 94 S.Ct., at 3007 (footnote omitted). . .

**Thus, we do not think this passage from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labeled "opinion."** . . . See *Cianci, supra,* at 62, n. 10 (The "marketplace of ideas" origin of this passage "points strongly to the view that the 'opinions' held to be constitutionally protected were the sort of thing that could be corrected by discussion"). **Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of "opinion" may often imply an assertion of objective fact.**

If a speaker says, "In my opinion John Jones is a liar," he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. Even if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications; and the statement, "In my opinion Jones is a liar," can cause as much damage to reputation as the statement, "Jones is a liar." As Judge Friendly aptly stated: "[It] would be destructive of the law of libel if a writer could escape liability for accusations of [defamatory conduct] simply by using, explicitly or implicitly, the words 'I think.' " See *Cianci, supra,* at 64. It is worthy of note that at common law, even the privilege of fair comment did not extend to "a false statement of fact, whether it was expressly stated or implied from an expression of opinion." Restatement (Second) of Torts, § 566, Comment *a* (1977). . .

. . . **But we think the " 'breathing space' " which " '[f]reedoms of expression require in order to survive,' "** *Hepps,* 475 U.S., at 772, 106 S.Ct., at 1561 (quoting *New York Times, supra,* 376 U.S., at 272, 84 S.Ct., at 721), **is adequately secured by existing constitutional doctrine without the creation of an artificial dichotomy between "opinion" and fact. (Boldface added.)**

In the instant case, the Defendants have named the Plaintiffs as "traitors" to the United States. The Defendants admit that the Plaintiffs are not traitors to the United States. Like *Milkovich,* the Defendants attempt to hide behind "opinion."

14

But in *Milkovich*, just as saying the Plaintiff was a "liar" and "lied under oath" was not protected under *Gertz or New York Times*, these Defendants cannot also call the Plaintiffs "traitors" and get away with it as protected speech. As noted in *Milkovich, supra*, it is a false dichotomy without basis in law.

The accusation that the Plaintiffs were "traitors" is "not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury." *See Milkovich* at 497 U.S. 22. Calling the Plaintiffs "traitors" can be objectively verified. *See Milkovich, supra, citing Scott v. News-Herald*, 25 Ohio St.3d 243, 496 N.E.2d 699 (Ohio 1986). The Defendants choose not to verify and admitted they chose not to verify whether or not the Plaintiffs were "traitors to the United States," had engaged in traitorous behavior, or had ever been charged or convicted of treason. *See Para. 18, 21, 22, 23, 24, 26, 27, 28, 29, 31, 40, 41, 42, 44, 45, 46 of PSOU.*

Thus, under *Milkovich*, the Defendants have no "opinion" defense and failed to verify the validity of the statements they made about the Plaintiffs on their website.

In support of this proposition, the Plaintiffs cite to the following: *See Paragraphs 8, 9, 11, 18, 20, 21, 22, 23, 24, 25, 26, 27, 31, 40, 41, 42, 44, 45, and 46.*

Thus, under *Milkovich*, the Defendants have no "opinion" defense and failed to verify the validity of the statement they made about the Plaintiffs being traitors on probush.com.

15

## D.     Defendants Libeled the Plaintiffs and Committed Libel Per Se Against Them

South Dakota law recognizes libel as a tort.  SDCL 20-11-3 defines libel as:

Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.

Further, South Dakota case law recognizes libel per se in defamation cases.  *See generally Fendrich v. Lauck*, 307 N.W.2d 607, 608-9 (S.D. 1981) (Defendant writing a letter to the sheriff and ask in he had "check[ed] out the [plaintiff] of robbery of [certain] Café" was libelous per se.

Dictionary.com defines libel per se as "libel that is actionable without the plaintiff introducing additional facts to show defamation or claiming special damages."  As examples of libel per se, the Michigan Press Association notes that "[s]tatements that are libelous per se include statements that accuse plaintiff of criminal activity, as well as other particularly egregious allegations such as a lack of chastity or statements that would injure a person in his business or profession."  *See Michigan Press Association "Libel Law in Michigan,"* http://www.michiganpress.org/libel.shtml, accessed July 7, 2005.

Plaintiffs contend that being called a "traitor" is an accusation of engaging in the crime of treason.  Treason is a felony under both South Dakota[1] and federal law.[2]

---

[1] 22-8-1. Definitions - "Treason."
   Any person who levies war against the state, adheres to its enemies, or gives them aid and comfort is guilty of treason. Treason is a Class 1 felony.

[2] 18 U.S.C. § 2381. Treason

Implicit and explicit in the Defendants' accusation of calling the Plaintiffs "traitors" is that they have given aid and comfort to the enemy, presumably Iraq and terrorists who wish to do America and Americans harm, prior to the invasion of Iraq in early 2003 by the U.S.  *See Paragraphs 8, 9, 10, 11, 20, 21, 22, 42, 47, and 51 of PSOUF.*  Interestingly, Dictionary.com defines "traitor" as "One who betrays one's country, a cause, or a trust, especially one who commits treason."

Thus, it is clear from the record that the Defendants called the Plaintiffs "traitors," that a "traitor" is one who has committed treason, treason is a crime, and thus, the accusations are libelous per se.  Partial summary judgment on this basis on behalf of the Plaintiffs is appropriate.

### E.     The "Disclaimer" Is Inoperative and Does Not Turn the Libelous Statements Non-Libelous

Disclaimers of parody or satire are not necessarily magic wands that turn defamatory or infringing expression into protected expression.  Federal courts have found that disclaimers that are weak or not prominent may not provide sufficient warning to the public that what they are reading or viewing is a parody or satire.  *See Anheuser-Busch, Inc. v. Baladucci Publications*, 28 F.3d 769, 774 (8th Cir. 1994) (Court highly critical of a trademark parodist, calling the disclaimer "virtually undetectable" and holding for plaintiff in trademark infringement case.)  More

---

Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States.

recently, the 8th Circuit did find that prominent disclaimers were effective in they parody of a well known Minneapolis law firm's website. *See Faegre & Benson, LLP v. Purdy,* 367 F.Supp.2d 1238, 1245 (D. Minn. 2005). Unfortunately, in both cases, the 8th Circuit failed to articulate a standard for what constitutes an effective disclaimer in these types of cases.[3]

Nonetheless, looking at the facts, when the "Traitors List" first came out on probush.com, the first "disclaimer" was at the bottom of page 24. A viewer had to click on it to get to the disclaimer. *See Paragraphs 8, 10, 11, 34, and 52 of PSOUF*. It was only later, after threats of a law suit and this litigation, that the disclaimer of "parody" was moved to the top of the page and additional text added. *See Paragraphs 36 and 52 of PSOUF*.

The Court can look at the "disclaimer" when it was positioned at the bottom of 24 pages and determine, like the judges in *Purdy* and *Baldaducci Publications,* whether the "disclaimers" were effective in conveying that the Plaintiff were not "traitors." The Plaintiffs believe that a reasonable person would not navigate through 24 pages then click on a link with a full explanation of the Defendants' views about the Plaintiffs' patriotism. The Defendants cannot have it both ways--call the Plaintiffs "traitors" in one breathe then say, effectively, "just kidding" in the next.

## IV.    Conclusion

For the reasons stated herein, the Plaintiffs believe they have met their burden of proof, that the key facts are not in controversy, and that they are entitled to partial

---

[3] Again, the Plaintiffs do not believe the website or the "Traitors List" are protected parody or satire.

18

summary judgment as to the Defendants' liability.

Dated July 7, 2005.

                Todd D. Epp Law Office, PLLC

                **/s/ Todd D. Epp**

                Todd D. Epp, Esq.
                610 S. Grand Ave.
                Harrisburg, SD  57032-2008
                (o) 605.767.5531 (f) 309.213.3884
                (email) toddepp5531@msn.com

                Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing pleading was filed via the District of South Dakota's CM/ECF system and sent via email on the 7th day of July, 2005, to:

    Ronald Parsons, Jr.
    Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
    PO Box 1107
    Sioux Falls, SD  57101-1107
    (email) ron@jhmmj.com

    Attorney for Defendants

                             **/s/ Todd D. Epp**
                             Todd D. Epp