

**FILED**

AUG 16 2005

CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

JAMES G. ABOUREZK;                    )
ROXANNE DUNBAR-ORTIZ, and             )          Civ. No. 03-4146
JANE FONDA,                           )
                                      )
        Plaintiffs,                   )          **PLAINTIFFS' BRIEF**
                                      )          **OPPOSING DEFENDANTS'**
v.                                    )          **MOTION FOR**
                                      )          **SUMMARY JUDGMENT**
PROBUSH.COM, INC., a Pennsylvania     )
corporation; MICHAEL MARINO, an individual; )
and BENJAMIN MARINO, an individual,   )
                                      )
        Defendants.                   )

COME NOW the Plaintiffs, James G. Abourezk, Roxanne Dunbar-Ortiz, and Jane Fonda,

by and through their attorney of record Todd D. Epp, and hereby submit this Plaintiffs' Brief

Opposing Defendants' Motion for Summary Judgment.

### CASE OVERVIEW

Defendant, Probush.com, Inc., which has as its sole Directors, Officers and Shareholders

the Defendants, Michael Marino and Benjamin Marino, has a website in support of President

Bush. On their website they have made a "Traitor's List", where they list names and pictures of

people they say do not support the President and are in fact "traitors". Plaintiffs discovered their

names and photographs on this list. Plaintiffs believe under both federal law and South Dakota

law, such a statement is considered libel per se. Plaintiff, James G. Abourezk, filed a Complaint

against the Defendant, Probush.com, Inc. Defendants filed a Motion to Dismiss, which was

denied by Judge Piersol. In February, 2005, Plaintiff was allowed to amend the Complaint and

add Jane Fonda and Roxanne Dunbar-Ortiz as Plaintiffs. The Defendants stipulated to adding

Benjamin Marino and Michael Marino as Defendants. Interrogatories and depositions of the Plaintiff and Defendants have been completed. The Plaintiff has filed a Motion for Partial Summary Judgment on the issue of liability. The Defendant has filed a Motion for Summary Judgment and the Plaintiffs are filing this Plaintiffs' Brief Opposing Defendants' Motion for Summary Judgment and pray that the Court denies Defendants' Motion for Summary Judgment.

Summaries of statements made by the Defendants and referenced in this Brief are set forth here for the convenience of the Court.

-Defendants are responsible for the material on the ProBush.com website. (See Exhibit 2, page 29, lines 7-13, Deposition of Benjamin Marino.)

-On the South Dakota Public Radio program "South Dakota Forum", Defendant Benjamin Marino admitted that he and his brother, Defendant Michael Marino, knew that the Plaintiffs did not engage in traitorous activity. (See Exhibit 1, page 2, lines 16-18, transcript of Benjamin Marino's appearance on South Dakota Public Radio.)

-Defendants placed Plaintiff Abourezk on the Traitor List because of his signature on the"Not in Our Name" petition. (See Exhibit 1, pages 5-6, lines 19-23, transcript of Benjamin Marino's appearance on South Dakota Public Radio.)

-Defendants admit the Plaintiffs, Dunbar-Ortiz and Fonda on the Traitor List because of their signatures on the "Not in Our Name" petition. (See Exhibit 2, page 49, lines 9-14, Deposition of Benjamin Marino; Exhibit 3, page 54, lines 13-16, Deposition of Michael Marino.)

-Defendant Michael Marino admitted that Plaintiffs Dunbar-Ortiz and Fonda, to his knowledge, had not committed any traitorous acts. (See Exhibit 3, page 54, lines 17-19,

Deposition of Michael Marino.)

-Defendants knew of no traitorous acts by Plaintiff Abourezk.  (See Exhibit 2, page 36, lines 15-25, Deposition of Benjamin Marino.)

-Defendant Benjamin Marino admitted that Plaintiff Abourezk is not a traitor to the United States.  (See Exhibit 1, page 10, lines 15-24, Defendant Benjamin Marino's appearance on South Dakota Public Radio.)

-Defendant Michael Marino admitted that Plaintiff Abourezk has not been a traitor.  (See Exhibit 2, page 29, lines 4-7, Deposition of Michael Marino.)

-Defendant Michael Marino admitted he had done no research on whether Plaintiff Abourezk was a traitor to the United States prior to placing him on the ProBush.com Traitor List.  (See Exhibit 2, pages 29-31, lines 23-30, Deposition of Benjamin Marino.)

-Defendant Benjamin Marino admitted he had done no research on the individuals named on the Traitor List and knows of no research Defendant Michael Marino performed concerning the individuals on the Traitor List.  (See Exhibit 2, page 30, lines 14-19, and page 54, lines 9-12, Deposition of Benjamin Marino.)

-Defendant Michael Marino admitted that "famous people" were chosen for the ProBush.com Traitor List to help drive traffic to the website.  (See Exhibit 3, pages 17-18, lines 17-19, Deposition of Michael Marino.)

-Defendant Michael Marino admitted he knew Plaintiff Abourezk has never been a traitor to the United States.  (See Exhibit 3, page 40, lines 2-7, and lines 18-21, Deposition of Michael Marino.)

-Defendant Michael Marino admitted he did not know whether the accusation of calling

Plaintiff Abourezk at traitor constituted any fact or facts about Plaintiff Abourezk. (See Exhibit 3, page 64, lines 12-22, Deposition of Michael Marino.)

-Defendants do not believe that Plaintiff Abourezk is guilty of a crime. (See Exhibit 5, Answer #17, Defendants' Answers to Plaintiffs' Interrogatories.)

-Defendants do not believe that Plaintiff Dunbar-Ortiz is guilty of a crime. (See Exhibit 5, Answer #18, Defendants' Answers to Plaintiffs' Interrogatories.)

-Defendants do not believe that Plaintiff Fonda is guilty of a crime. (See Exhibit 5, Answer #19, Defendants' Answers to Plaintiffs' Interrogatories.)

## STANDARD OF REVIEW

Summary judgment can be granted only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Dr. Performance of Minnesota, Inc. v. Dr. Performance Management, LLC*, 2002 WL 31628440 (D.Minn.)) (2002) (quoting Fed.R.Civ.P. 56(c)). "A fact is material only when its resolution affects the outcome of the case. A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Id* at 2. All evidence and inferences are to be viewed in a light most favorable to the nonmoving party. *Id* at 3. (Citations omitted.)

## LIBEL STANDARDS

"In *Milkovich* ... the Supreme Court clarified that First Amendment protection for speech that potentially harms the reputation of others takes shape essentially in two lines of cases, or two free speech doctrines." *Condit v. Dunne*, 317 F.Supp.2d 344, 360 (2004), citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 110 S.Ct. 2695 (1990).

4

### 1. New York Times Line of Cases (Public)

One line of cases, the *New York Times* line, is in regard to "public officials, public figures, limited public figures or on matters of public concern ..." *Condit at 361.*

The Supreme Court has held that a **public official** has to show that the defamatory publication was 1) false, and 2) stated with actual malice, which is defined as "with knowledge that it was false or with reckless disregard of whether it was false or not". *New York Times Co. v. Sullivan*, 376 U.S. 254, 279, 84 S.Ct. 710, 11 L.Ed.2d 686 (emphasis added). The Court extended this standard to include **public figures** in *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967), (emphasis added).

Where there is a **private figure and "a matter of public concern**, a plaintiff must show ... **false** connotations [and that they] were made with some level of **fault** as required by *Gertz*." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20-21, 110 S.Ct. 2695 (1990) (emphasis added). See also *Gertz* at 347, and *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-769, 106 S.Ct.1558 (1986). ( *"Hepps* stands for the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law... ." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S.Ct. 2695 (1990).) In *Gertz* the Court held that "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual", *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997 (1974) (emphasis added), "to impose liability ... on a less demanding showing than that required by New York Times." *Id* at 348. *Gertz* further held that "the States could not permit recovery of presumed or punitive damages on less than a showing of *New York Times*

5

malice." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19, 110 S.Ct. 2695 (1990), citing *Gertz* at 350.

Determining if a matter is of **public concern** is done by "assess[ing] the statement's 'content, form and context ... as revealed by the whole record.'" *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1997), citing *Dun & Bradstreet*, 472 U.S. at 761, (quoting *Connick*, 461 U.S. at 147-48, 103 S.Ct. At 1690) (emphasis added). "[I]t is sufficient that the speech concern matters in which even a relatively small segment of the general public might be interested." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 132 (1997), quoting *Roe v. City of San Francisco*, 109 F.3d 578, 585 (9th Cir.1997).

## 2. Type of Speech Line of Cases

The other line of cases is regarding "the *type* of speech" ... such as 'rhetorical hyperbole', 'parody', 'loose' and 'figurative' ... "statements that cannot 'reasonably be interpreted as stating actual facts' about an individual." *Condit v. Dunne*, 317 F.Supp.2d 344, 360 (2004), citing *Greenbelt Cooperative Publishing Association, Inc. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537 (1970); *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876 (1988); and *Old Dominion and National Association of Letter Carriers v. Austin*, 418 U.S. 264, 94 S.Ct. 2770 (1974).

## 3. Court Declined to Set up a Third Line of Protection for Opinion

In *Milkovich* the Court declined to set up a separate protection for opinion. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695 (1990). "The Supreme Court in *Milkovich* declined to recognize a third free speech doctrine that would protect statements categorized as opinion." *Condit v. Dunne*, 317 F.Supp.2d 344, 361 (2004).

6

"It would be destructive of the law of libel if a writer could escape liability for accusations of crime simply by using, explicitly or implicitly the words 'I think'." *Cianci v. New Times Publishing Company*, 639 F.2d 54, 64 (2nd Cir. 1980).

## ARGUMENT

The "interest in uninhibited press" and the need for "judicial redress of libelous utterance" are **equally** compelling". *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774, 106 S.Ct.1558 (1986) (emphasis added).

> The right of a man to the protection of his own reputation from unjustified invasion and wrongful hurt reflects no more than our basic concept of the essential dignity and worth of every human being–a concept at the root of any decent system of ordered liberty. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 14, 110 S.Ct. 2695, (1990), quoting Justice Stewart in *Rosenblatt v. Baer*, 383 U.S. 75, 86, 86 S.Ct. 669, 676, 15 L.Ed.2d. 597 (1966).

> The destruction that defamatory falsehood can bring is, to be sure, often beyond the capacity of the law to redeem. Yet, imperfect though it is, an action for damages is the only hope for vindication or redress the law gives to a man whose reputation has been falsely dishonored. *Id.*, at 14, quoting *Rosenblatt*, 383 U.S. at 92-93.

"[W]e have regularly acknowledged the 'important social values which underlie the law of defamation,' and recognized that '[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 22, 110 S.Ct. 2695, (1990), quoting *Rosenblatt*, 383 U.S. at 86.

"[T]he right to communicate information of public interest is not unconditional." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 150, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967).

Newspapers, magazines, and broadcasting companies are businesses

> conducted for profit and often make very large ones. Like other
> enterprises that inflict damage in the course of performing a service
> highly useful to the public ... they must pay the freight; and injured
> persons should not be relegated (to remedies which) make their
> collection of their claims difficult or impossible unless strong policy
> considerations demand. *Curtis Publishing Co. v. Butts*, 388 U.S.
> 130, 147, 87 S.Ct. 1975, 18 L.Ed.2d 1094, quoting *Buckley v. New*
> *York Post Corp.*, 2 Cir., 373 F.2d 175, 182.

"The fact that dissemination of information and opinion on questions of public concern is ordinarily a legitimate, protected and indeed cherished activity does not mean, however, that one may in all respects carry on that activity exempt from sanctions designed to safeguard the legitimate interests of others. A business 'is not immune from regulation because it is an agency of the press. The publisher of a newspaper has no special immunity from the application of general laws. He has no special privilege to invade the rights and liberties of others.'" *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 150, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967), quoting *Associated Press v. National Labor Relations Board*, 301 U.S. 103, 132-133, 57 S.Ct. 650, 656, 81 L.Ed. 953.

### New York Times Line of Cases/Public Standards

**A. Type of Persons Herein**

#### 1. Plaintiffs are not Public Officials.

As in *Gertz*, (where Gertz had several years prior served on certain Chicago committees, but had not held any government position for a number of years), Mr. Abourezk has not held any government or public service position for many years. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351, 94 S.Ct. 2997. Further, Ms. Fonda and Ms. Dunbar-Ortiz do not and have not held any

government or public service positions.  Therefore, none of the Plaintiffs can be considered public officials.

## 2.  Plaintiffs are not Public Figures regarding this particular controversy, they are Private Figures for purposes of this case.

*Gertz* stated that although Gertz had been an officer in civic and professional groups, had written some legal articles and books, and was "well-known in some circles, he had achieved no general fame or notoriety in the community." *Gertz* at 351 and 352.  "Absent clear evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life.  It is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." *Id* at 352.  Arguably, none of the Plaintiffs are particularly well-known with regard to the general issue of criticism of President Bush or the war in Iraq, nor are any of them identified with such criticism by the general American public.  One would venture to say that the majority of Americans do not know who Ms. Dunbar-Ortiz is and would not recognize her name, nor would they be aware of Mr. Abourezk's travel to Iraq or his articles on the subject.  While Ms. Fonda is most probably well-known to the general public for other matters, her limited involvement in this particular controversy is not well-known to the general public.   Even the Defendants have admitted that they did not know who Ms. Dunbar-Ortiz and Mr. Abourezk were and put the Plaintiffs names and photographs on the "Traitor List" because they had signed the "Not in Our Name" petition.  (See Transcript of Defendant, B. Marino's, appearance on South Dakota Public Radio, pages 5-6, lines 19-23, and page 49, lines 9-14; and Deposition of M. Marino, page 54,

lines 13-16.)  When determining whether the Plaintiffs are public figures for the purposes herein and applying the standard of "looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation" set forth in *Gertz*, it becomes clear that the Plaintiffs are to be considered private figures for the purposes of this case.

## B. The labeling of the Plaintiffs as traitors to their country is a matter of grave Public Concern.

Determining if a matter is of public concern is done by "assess[ing] the statement's 'content, form and context ... as revealed by the whole record.'"  *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1997), citing *Dun & Bradstreet*, 472 U.S. at 761, (quoting *Connick*, 461 U.S. at 147-48, 103 S.Ct. At 1690) (emphasis added).  In the context of criticism of President Bush and the war in Iraq, 9/11 and the fear of terrorist attacks, the labeling of anyone as a traitor to our country is a significant issue in the times in which we live and is a matter of grave public concern.

## C. Private Figure/Matter of Public Concern: The Defendants are not protected by the First Amendment.

In *Milkovich*, in analyzing the case of a private figure and a matter of public concern the Court stated, "[t]he dispositive question in the present case then becomes whether a reasonable factfinder could conclude that the statements in the Diadiun column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding.  We think this question must be answered in the affirmative." *Milkovich* 497 U.S. at 21.  Herein, we look at "whether a reasonable factfinder could conclude that the statements in the ProBush.com website imply an

assertion that [the Plaintiffs] are traitors." *Id.* The answer to that is yes. Defendants describe the

ProBush.com website and the Traitor List as follows:

> The initial page of the website contains a photograph of the President emblazoned with the headings "President of the United States" and "George Walker Bush". Below the image are three captions labeled "Our Hero," "Hail to the Chief," and "Support Our Troops." The "Our Hero" caption links to a page that displays free Iraqi citizens expressing gratitude to the United States and President Bush for the liberation of Iraq. The "Hail to the Chief" caption links to a page that displays a photograph of President Bush with an American flag in the background. The "Support Our Troops" caption links to a page that itself links to websites for various military support and relief organizations, such as the USO and the American Red Cross, and encourages visitors to participate in or provide financial support for those organizations. The website also provides links to various other web pages, news stories, and opinion pieces that are generally supportive of President Bush, his Administration, and the United States military. In addition, the website advertises "ProBush.com" apparel, posters, and other items. At the top of the home page, above the photograph of President Bush, is a list of links to various other pages included on the website, two of which are labeled "Patriot List" and "Traitor List". See Defendants Brief in Support of Motion for Summary Judgment, Page 5, under the heading "ProBush.com". (All citations to Defendants' Affidavits omitted.)

> The "Traitor List" begins with what appears to be a dictionary definition of the word "treason," stating: "Treason: Violation of allegiance toward one's country or sovereign, especially the betrayal of one's country by waging war against it or by consciously and purposely acting to aid its enemies." ... [It then states], "Traitor: If you do not support our President's decisions you are a traitor." Next sentence "Get to know your traitor!" appears. The website also states: "*Parody. Not to be taken seriously. These 'traitors' are not legal 'traitors' of the United States." See Defendants Brief in Support of Motion for Summary Judgment, Page 6, under the heading "The 'Traitor List'". (Citation to Defendants' Affidavit omitted.) (Defendants then state that there are a number of well-known people of the Traitor List and that the names were obtained from the signatories of the "Not in My Name" petition.)

Further, the Defendants state in their footnote to this description of the Traitor List:

> At the time that the Plaintiff's complaint was filed, this disclaimer
> appeared at the bottom, rather than the top, of the 'Traitor List.'
> [Which was on page 24 of 24 pages.]   A previous version of this
> sentence appearing on the website included the additional phrase,
> 'though we wish they were.'  See Defendants Brief in Support of
> Motion for Summary Judgment, Page 6, under the heading "The
> 'Traitor List'", footnote 1. (Citation to Defendants' Affidavit omitted.)

In using Defendants' own description of the ProBush.com website and the Traitor List, it is clear

that a reasonable person could conclude that the website and the Traitor List imply that the

Plaintiffs are traitors to their country, and further are guilty of the crime of treason.

The Court in *Milkovich* went on to state that, "the clear impact in some nine sentences

and a caption is that [Milkovich] 'lied at the hearing after ... having given his solemn oath to tell

the truth.'" *Milkovich* at 21, (citation omitted).  Likewise, herein, the clear impact of the

ProBush.com website and Traitor List statements is that the Plaintiffs are traitors to their country

who have committed the crime of treason.  Further, the "general tenor of the [website, does not]

negate this impression." *Id* at 21.   The Court in *Milkovich* then goes on to state, [t]his is not the

sort of loose, figurative, or hyperbolic language which would negate the impression that the

writer was seriously maintaining that petitioner committed the crime of perjury." *Id* at 21.  The

same is true herein.  Statements that define treason as a "[v]iolation of allegiance toward one's

country or sovereign, especially the betrayal of one's country by waging war against it or by

consciously and purposely acting to aid its enemies, followed by a further statement of a traitor,

followed by a "Traitor List", all within the President Bush, American Flag, Support Our Troops,

links to USO and American Red Cross, new stories, etc., atmosphere, is in no manner "loose,

figurative, or hyperbolic language that would negate the impression that the writer was seriously"

asserting that the Plaintiffs herein had committed treason against their country and were being

labeled as traitors. Further, the mere fact that the site contains ads to sell items does not diminish the context of the Defendants assertions against the Plaintiffs, as the news websites of CNN and the other major networks are commonly laden with advertising. Defendants' assertion that somehow it is not defamatory if the libel includes a large number of people being libeled instead of one, or that somehow because they are libeling a number of well-known people that makes it all right, does not hold water. The U.S. Supreme Court has not held that there is to be a limit on the number of people that can be libeled at one sitting, nor has it held that because it happens to be a number of well-known people that are being defamed that a libeler can do so with impunity.

Further, Defendants' ineffective and virtually nonexistent "disclaimer" provides no measurable protection against the defamation they perpetrated upon the Plaintiffs. Further, one cannot get away with defaming someone simply by adding a tag line saying that it's a parody, or they're just joking.

The Court in *Milkovich* then stated "the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false." Herein, the assertion that the Plaintiffs have committed treason and are traitors to their country was also capable of being verified by the Defendants as being completely untrue prior to the Defendants publishing those assertions on their website.

Finally, the Plaintiffs have established 1) that the statements were false, and 2) fault on the part of the Defendants as the Defendants, made no attempt to verify their assertions and further, knew their assertions were false. (See references to Defendants' statements in the Case Overview hereinabove.) In fact, the fault established by the Plaintiffs is at a higher level than is

actually required to meet this burden, as it even meets the level of the *New York Times* level of actual malice.

**D. Even if the Plaintiffs are considered to be Public Figures, the Defendants are not protected.**

The Plaintiffs have already met the much stricter standard of *New York Times*. The Plaintiffs have already established that the defamatory publication was false. The second portion of the *New York Times* standard, that it was stated with actual malice, i.e. "with knowledge that it was false or with reckless disregard of whether it was false or not". *New York Times Co. v. Sullivan*, 376 U.S. 254, 279, 84 S.Ct. 710, 11 L.Ed.2d 686, has also been established as the Defendants have admitted that they knew the statements were false and published them anyway.

In discussing *Butts*, where the publisher did not attempt to verify the statements made about an athletic director fixing a game, the Court states:

> [T]he evidence showed that the Saturday Evening Post had published an accurate account of an unreliable informant's false description of the Georgia athletic director's purported agreement to "fix" a college football game. Although there was reason to question the informant's veracity, just as there was reason to doubt Thompson's story, the editors did not interview a witness who had the same access to the facts as the informant and did not look at films that revealed what actually happened at the game in question. [FN38] This evidence of an intent to avoid the truth was not only sufficient to convince the plurality that there had been an extreme departure from professional publishing standards, but it was also sufficient to satisfy the more demanding *New York Times* standard ... . *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 693, 109 S.Ct. 2678 (1989) (citation omitted).

Failure to verify the statements in *Butts* "was also sufficient to satisfy the more demanding *New York Times* standard." *Id.* Here, not only did the Defendants not verify the

accuracy of their statements, they knew that the statements were false.  (See references to Defendants' statements in the Case Overview hereinabove.)

"[T]here is no constitutional value in false statements of fact.  Neither the intentional lie nor the careless error materially advances society's interest in 'uninhibited, robust, and wide-open' debate on public issues." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340, 94 S.Ct. 2997 (1974), quoting *New York Times Co. v. Sullivan*, 376 U.S. at 270.  "They belong to that category of utterances which 'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Gertz* at 340, quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572, 62 S.Ct. 766, 86 L.Ed. 10331 (1942).

"[A] departure from the kind of care society may expect from a reasonable man performing such activity leaves the actor open to a judicial shifting of loss." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967).

"[A] 'public figure' who is not a public official may also recover damages for a defamatory falsehood whose substance makes substantial danger to reputation apparent, on a showing of highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967).

## Type of Speech Line of Cases

**A. Declaring the Plaintiffs Traitors is defamatory and is not rhetorical hyperbole, loose figurative language or parody .**

### 1. Declaring the Plaintiffs Traitors is defamatory.

Defendants have libeled the Plaintiffs in declaring them traitors to their country.  In footnote 20, the Court in *Ollman* states, "... we observe that if the term [fascist] were applied in a history of Italy between the World Wars and from the context it was clear that the application of the term was to adherents of Mussolini, the statement would be defamatory." *Ollman v. Evans*, 750 F.2d 970, 981, 242 U.S.App.D.C. 301 (1984).  Herein, the context of the events of the last few years:  the terrorist attacks on the country of 9/11, the hijacking of four airline jets, two sent crashing into and destroying the Twin Towers of the World Trade Center, a third into the Pentagon, and a fourth into the ground in Pennsylvania, killing thousands of innocent Americans; the war against terror in Afghanistan; the search for Osama Bin Laden;  the war in Iraq searching for WMD the President declared were present and could be used against us or given to terrorists; the levels of threat of terrorist attacks perceived and set by the government at various times of the year to be higher or lower in light of major events or occasions; the sight of personnel armed with machine guns at the entrance to Disney World on the anniversary of 9/11; the finding of powder in various public offices and post offices setting off evacuations and closings of buildings; the Patriot Act and the new office of Homeland Security; the thousands of individuals being held in the United States and other countries on suspicion of committing acts or supporting such acts against the United States and Americans here and around the world, **this** is the context of the country and the world in which we find ourselves living today.  A few years ago calling someone a traitor may not have been thought of with the same strong, harsh and damning meaning that word portrays in this time.  Now, labeling someone as having committed treason by "[v]iolation of allegiance toward one's country or sovereign, especially the betrayal of one's country by waging war against it or by consciously and purposely acting to aid its enemies", and labeling

someone as being a traitor, is a serious and damaging act of defamation. It is arguably the most serious crime that a person can be accused of in these times.

Defendants' contention that their website "employs identical language to that examined in *Letter Carriers*, [and that] the Supreme Court has already expressly held [this language] to be non-actionable" (See Section B, the first paragraph on page 16 of Defendants' Brief in Support of Motion for Summary Judgment) does not hold water. In *Letter Carriers* the union published the definition of a scab written by Jack London in reference to those plaintiffs. *Old Dominion and National Association of Letter Carriers v. Austin*, 418 U.S. 264, 282-283, 94 S.Ct. 2770 (1974). The Court clearly states that the National Labor Relations Act gives unions the right to use "intemperate, abusive, or insulting language without fear of restraint or penalty if it believes such rhetoric to be an effective means to make its point." *Letter Carriers* at 283 and generally. As such *Letter Carriers* is distinguishable from the case herein in that not only is the word "traitor" used in two completely different situations, contexts and definitions, but the union using that word is protected under the National Labor Relations Act as well, which has no bearing on the case herein.

**2. The Defendants defamatory statements were not 'rhetorical hyperbole, or loose, figurative language'.**

The Defendants defamatory statements: "Treason: Violation of allegiance toward one's country or sovereign, especially the betrayal of one's country by waging war against it or by consciously and purposely acting to aid its enemies."; "Traitor: If you do not support our President's decisions you are a traitor."; "Get to know your traitor!"; and the portrayal of Plaintiffs on a "Traitor List" with their names and photographs, all set forth on the ProBush.com

website, are not "employed in a 'loose, figurative sense' or as 'rhetorical hyperbole'. *Cianci v.*

*New Times Publishing Company*, 639 F.2d 54, 64 (2nd Cir. 1980).

In *Cianci* an incumbent mayor sued a newspaper for publishing allegations that he had

committed rape and then covered it up. See *Cianci* generally. The Court stated,

> "[t]he charges of rape and obstruction of justice were not employed
> in a 'loose, figurative sense' or as 'rhetorical hyperbole'. **A jury
> could find that the effect of the article was not simply to convey
> the idea that Cianci was a bad man unworthy of the confidence
> of the voters ... but rather to produce a specific image of [certain]
> conduct... . Such serious charges have not yet become 'undefined
> slogans that are part of the conventional give-and-take in our
> economic and political controversies.** (citation omitted.) To call such
> charges merely an expression of 'opinion' would be to indulge in
> Humpty-Dumpty's use of language. We see not the slightest
> indication that the Supreme Court or this court ever intended anything
> of this sort and much to demonstrate the contrary." *Cianci v. New
> Times Publishing Company*, 639 F.2d 54, 64 (2nd Cir. 1980).

Hyperbole is described as "depend[ing] primarily upon whether a reasonable person could

interpret the statement to provide actual facts about the individual or institution it describes."

(citations omitted.)

Under the facts in *Levinsky's* (where a Wal-Mart manager had said that Levinsky's stores

were trashy and that it took 20 minutes for them to answer the phone), the Court stated, the word

"trashy" when used to describe their stores was deemed "loose language that cannot be

objectively verified." *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 130 (1997). With

regard to the "20 minutes" statement, the Court stated:

> [u]nder this criterion, the "20 minutes" statement seems sufficiently factual
> to be proved true or false. For one thing, Olson's use of a specific time frame
> cuts against treating his remark as hyperbole or other non-factual speech. For
> another thing, the assertion can be verified or rebutted by objective evidence
> of how Levinsky's staff handled the telephone calls (evidence of the type that,

in fact, Levinsky's adduced and the jury heard). In addition, the statement is not inherently implausible. Especially given the pervasive folklore concerning the difficulties that consumers encounter in dealing with merchants telephonically, we believe that a reasonable listener could interpret the "20 minutes" comment as a statement of fact about Levinsky's business practices.

As the appellant correctly notes, we cannot take the "20 minutes" remark in isolation. Seizing this potential lifeline, Wal-Mart struggles to persuade us that the second part of Olson's statement–"the phone is never picked up at all"–colors the context and makes it plain that he was speaking figuratively. Though context is an important aspect of the *Milkovich* inquiry (citations omitted), it does not aid the appellant here. While the second portion of Olson's statement does not incorporate a fixed temporal interval, that remark, when read in tandem with the first portion of the statement, does not defuse the defamatory potential. A reasonable listener could well conclude that Levinsky's service was so bad that the company not only left customers dangling on the line for 20 minutes at a crack, but also, on some occasions, simply did not bother to answer the telephone.

In fine, the overall context does little to dispel the impression that Olson's comment stated facts about Levinsky's business practices. After all, Levinsky's and Wal-Mart were locked in hand-to-hand combat for shoppers' dollars, and Olson held an executive position with Wal-Mart. While a reasonable listener might be skeptical given Olson's likely motive (to try to lure potential customers to his store), he gave his assertion a particularized factual component. A listener reasonably could conclude that Olson intended to describe from personal knowledge how Levinsky's treated callers.

The short of it is that neither the type of language employed nor the overall tenor of the article negated the reasonable impression that Olson steadfastly maintained that Levinsky's telephone practices were in fact as he described them to be. ...the "20 minutes" statement properly could be treated as fact-based defamation. So viewed the statement does not fit within the contours of protected speech, and it was, as the lower court concluded, amenable to suit ... . *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 131-132 (1997).

When a term is objectively verifiable, then it is "fit for jury consumption". *Levinsky's* at

136. As in *Levinsky's*, the statements calling the Plaintiffs traitors is factual enough "to be

proven true or false, for example, the use of the definition of treason as a [v]iolation of allegiance

toward one's country or sovereign, especially the betrayal of one's country by waging war against

it or by consciously and purposely acting to aid its enemies is "specific [enough to] cut against treating [the] remark as hyperbole or other non-factual speech." *Id* at 131-132. Further, within the context of the website and the times in which we live, the statements "are not inherently implausible". *Id* at 131-132.

"[A]ssertions that he 'lied at [a] hearing after ... having given his solemn oath to tell the truth' was actionable because the language was 'not the sort of loose figurative, or hyperbolic language' that would counter the impression that the writer seriously maintained the plaintiff had committed perjury". *Campbell v. Citizens for an Honest Government*, 255 F.3d 560, 567-568 (8th Cir. 2001) (citations omitted).

In *Dilworth,* where an engineer sued a math professor who wrote a book in which he called the engineer a crank related to his math ideas, the Court held that it was not defamation. However, the Court said if he had defined 'crank' "in terms that called into question Dilworth's character or sanity rather than merely his judgment or learning, we would have a different case." *Dilworth v. Dudley*, 75 F.3d 307, 311 (1996).

"We also think the connotation that petitioner committed perjury is sufficiently factual to be susceptible of being proved true or false." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695 (1990).

As in *Levinsky's*, the other statements made by the Defendants herein, "when read in tandem with the first ... statement, does not defuse the defamatory potential." In fact, they only serve to reinforce the Defendants label of the Plaintiffs as traitors. A reasonable person could conclude that the Defendants were asserting as a statement of fact that the Plaintiffs had

committed the crime of treason and that the Plaintiffs were traitors to their country.    *Id* at 131-132.

The overall context of the website as set forth herein does not "dispel the impression" that the Defendants were purporting to assert facts. *Id* at 131-132. Further, even if a reasonable person were skeptical, as stated in *Levinsky's* above, the Defendants gave their assertions "particularized factual components" by their statements that define treason as a "[v]iolation of allegiance toward one's country or sovereign, especially the betrayal of one's country by waging war against it or by consciously and purposely acting to aid its enemies", followed by a further statement of a traitor, followed by a "Traitor List", all within the context of President Bush, the American Flag, Support Our Troops, links to USO and American Red Cross, news stories, etc. *Id* at 131-132. The overall impression of the website does not negate the impression that ProBush.com maintains that the Plaintiffs are traitors. *Id* at 131-132.

In regard to the context of a defamatory statement, "Defendant ... is not immunized from a defamation suit simply because he recited false accusations on a talk show as opposed to a news program." *Condit v. Dunne*, 317 F.Supp.2d 344, 363 (2004). Citing also *Brian v. Richardson*, 87 N.Y.2d 46, 53, 637 N.Y.S.2d 347, 660 N.E.2d 1126, 1131 (1995) ("noting that the statement's publication on the Op Ed page of the New York Times 'does not automatically insulate the author from liability for defamation'"). Further, the Court in *Condit* states, "statements are not protected by the First Amendment simply because they appeared in a gossip column. While the context of allegedly defamatory statements influences the impact of the statements on the audience, no context gives free reign to a commentator to publish false facts as if they were true." *Condit v. Dunne*, 317 F.Supp.2d 344, 367 (2004).

"[T]he clear impact in some nine sentences and a caption is that [Milkovich] 'lied at the hearing after ... having given his solemn oath to tell the truth.' This is not the sort of loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining that petitioner committed the crime of perjury. Nor does the general tenor of the article negate this impression." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 21, 110 S.Ct. 2695 (1990).

The general tenor and context herein is not diminished by advertising being shown on the website. If one checks the websites of CNN and other major network news websites, one also finds advertising. Use of advertising on legitimate and trustworthy websites is commonplace, and does not affect the credibility or the context of what is being stated as truth on those websites. Further, the Supreme Court has not provided an exception to the defamation laws for someone who simply puts advertising in with their libelous statements.

### 3. The Defendants defamatory statements were not parody.

Parody is defined as "a humorous or satirical imitation". *The New Merriam-Webster Dictionary*, published in 1989. There is no imitation of anything in regard to the Defendants' website, or specifically as to the statements thereon, or as to the Traitor List. By very definition, the Defendants cannot claim that this is a parody because they have not imitated anything on their website, humorous, satirical or otherwise. An example of a parody is where Hustler published an imitation of an advertisement that had been changed portray Falwell as having his first sexual encounter in an outhouse, drunk and with Falwell's mother. *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876 (1988). Further, the Defendants have not imitated physical traits or politically embarrassing events. Even if for some reason the Defendants' assertion that

22

the Plaintiffs are traitors was determined to be a "parody", then the Defendants' assertions would still be found to be libel based on the arguments set forth herein as to "rhetorical hyperbole" and "loose, figurative language".

**4. Defendants assertions that the Plaintiffs are traitors is an accusation of a crime and libel per se.**

Treason is a capital felony and asserting Plaintiffs are traitors is libel per se.

> A classic example of a statement with a well-defined meaning is an accusation of a crime ... those norms are so commonly understood that the statements are seen by the reasonable reader or hearer as implying highly damaging facts.  Post-*Gertz* courts have therefore not hesitated to hold that accusations of criminal conduct are statements 'laden with factual content' that may support an action for defamation. *Ollman v. Evans*, 750 F.2d 970, 980, 242 U.S.App.D.C. 301 (1984), (citation omitted).  Allegations that "a judge is corrupt" has been held actionable." *Ollman v. Evans*, 750 F.2d 970, 980, 242 U.S.App.D.C. 301 (1984), citing *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 1299, 397 N.Y.S.2d 943, 366 N.E.2d 1299, cert. Denied, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977).  "'Corruption', at least in the context of public service, was deemed to imply factual allegations of bribery or other official malfeasance." *Ollman v. Evans*, 750 F.2d 970, 980, 242 U.S.App.D.C. 301 (1984).

In *Greenbelt* where a newspaper reported on public meetings and that Bresler's negotiation tactics had been referred to as 'blackmail' by his critics more than once at the meeting, the Court held in those circumstances that the newspaper was accurately reporting the story.  However, the Court went further stating, "[i]f the reports had been truncated or distorted in such a way as to extract the word 'blackmail' from the context in which it was used at the public meetings, this would be a different case." *Greenbelt Cooperative Publishing Association, Inc. v. Bresler*, 398 U.S. 6, 13, 90 S.Ct. 1537 (1970).

The South Dakota Supreme Court held that the statement "Did you check out [plaintiffs] for the robbery at [certain] Café?", in a letter to the sheriff was libel per se. *Fendrich v. Lauck*, 307 N.W.2d 607, 607-609 (1981).

"Accusations of criminal activity, even in the form of opinion, are not constitutionally protected. ... No First Amendment protection enfolds false charges of criminal behavior." *Cianci v. New Times Publishing Company*, 639 F.2d 54, 63 (2nd Cir. 1980), quoting *Gregory v. McDonnell Douglas Corp.*, (17 Cal.3d 596, 604, 131 Cal.Rptr. 641, 646, 552 P.2d 425 (1976)). 42 N.Y.2d at 382, 397 N.Y.Sd at 951, 366 N.E.2d at 1307.

### 5. Defendants deliberately published false statements against the Plaintiffs asserting that they were traitors.

Defendants herein deliberately published statements against the Plaintiffs, asserting that the Plaintiffs were traitors, knowing that those statements were false.

Once a defamatory statement is made, once the damage is done, it is hard to undo. "Of course an opportunity for rebuttal seldom suffices to undo harm of defamatory falsehood. Indeed, the law of defamation is rooted in our experience that the truth rarely catches up with a lie." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, FN9, 94 S.Ct. 2997 (1974).

"[A]n individual's interest in his or her reputation is of the highest order. Its protection is an eloquent expression of the respect historically afforded the dignity of the individual in Anglo-American legal culture. A defamatory statement may destroy an individual's livelihood, wreck his standing in the community, and seriously impair his sense of dignity and self-esteem." *Ollman v. Evans*, 750 F.2d 970, 974, 242 U.S.App.D.C. 301 (1984).

"[I]t is not unjust that a publisher be forced to pay for the 'venting of his spleen' in a manner which does not meet even the minimum standards required for constitutional protection." Further, in cases where the imposition of compensatory damages is "an inordinately light burden punitive damages serve a wholly legitimate purpose in the protection of individual reputation. We would hold therefore, that misconduct sufficient to justify the award of compensatory damages also justifies imposition of a punitive award, subject of course to the limitation that such award is not demonstrated to be founded on the mere prejudice of the jury." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 161, 87 S.Ct. 1975, 18 L.Ed.2d 1094, (1967).

## CONCLUSION

For the reasons stated herein, the Plaintiffs respectfully request that the Defendants' Motion for Summary Judgment be denied.

Dated this *15* day of August, 2005.

Charles Abourezk
ABOUREZK & ZEPHIER P.C.
Attorneys for Plaintiff
Post Office Box 9460
117 Knollwood Drive
Rapid City, South Dakota 57709
(605) 342-0097

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiffs' Brief Opposing Defendants' Motion for Summary Judgment was mailed, by first class United States Mail, postage pre-paid on the _15_ day of August, 2005 to:

> Ronald Parsons, Jr.
> Johnson, Heidepriem, Miner, Marlow & Janklow, LLP
> P.O. Box 1107
> Sioux Falls, SD 57101-1107
> (email) ron@jhmmj.com

Attorney for the Defendants

Charles Abourezk